# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 24-303** |
| JUSTIN HEIMBACH | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Justin Heimbach, a criminal history VI convicted felon, fraudster, and menace to the Lehigh Valley, regularly and without shame or compunction stole from the government and others for years. This prosecution and guilty plea are the end result of a fourteen-year-long crime spree throughout Eastern Pennsylvania, and anything but a lengthy prison sentence will be insufficient to ensure the community is safe from his presence among us. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration at the top of the agreed upon sentencing range of 63 to 96 months, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, and further recommends a sentence at the top of the agreed upon sentencing range of 63 to 96 months' imprisonment.

## I.    BACKGROUND

On February 26, 2026, the defendant pled guilty to six counts of mail fraud, in violation of 18 U.S.C. § 1341, and four counts of wire fraud, in violation of 18 U.S.C. § 1343. During his plea colloquy, the defendant admitted that he unlawfully caused the filing of fraudulent pandemic unemployment assistance applications which falsely indicated that the individual applicants were unemployed from Heimbach's defunct construction company. These applications resulted in the mailing of multiple PUA debit cards to addresses to which Heimbach had access. Heimbach also admitted to participating in a scheme to purchase multiple vehicles

- 2 -

with bad checks issued on a bank account in the name of one of his other defunct construction companies.

## II.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentence

The maximum sentence that may be imposed on the defendant for each of Counts One through Six, charging mail fraud, a term of imprisonment of 20 years, a term of supervised release of 3 years, a fine of $250,000, and a special assessment of $100; and for each of Counts Seven through Ten, charging him with wire fraud, a term of imprisonment of 20 years, a term of supervised release of 3 years, a fine of $250,000, and special assessment of $100.

The total permissible statutory maximum sentence is a term of imprisonment of 200 years, a term of supervised release of 3 years, a fine of $2,500,000, and a special assessment of $1,000.

### B.    Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range. The government agrees that the defendant has a base offense level of seven, as directed by USSG § 2B1.1(a)(1). PSR ¶ 49. The government agrees that the fraud loss in this case is above $550,000, which results in a fourteen-level increase from the base offense level under USSG § 2B1.1(b)(1)(H). PSR ¶ 49. The government agrees that a two-level increase for ten or more victims is appropriate under USSG § 2B1.1(b)(2)(A)(i). PSR ¶ 50. The government also agrees that a two-level increase for leadership is appropriate under USSG § 3B1.1(c). PSR ¶ 52. Furthermore, the government agrees that the defendant has shown acceptance of responsibility by timely notifying the government of his intent to plead guilty, and that a total three-level downward decrease is warranted under USSG § 3B1.1(a)-(b). The government agrees that the

defendant's total Guideline calculation is 22, and further that he is in criminal history category VI. As a result, the defendant's guideline range is 84 to 105 months' imprisonment.[2]

Heimbach has lodged two objections to the Guidelines calculation in the PSR. Heimbach objects to the application of the ten or more victim enhancement under USSG § 2B1.1(b)(2)(a)(i); and the leadership enhancement under USSG § 3B1.1(c). In response, the Probation Department asserts this enhancement is applicable as a result of the combination of car dealerships victimized, theft from the government, and individuals who stated in interviews that they did not give Heimbach permission to use their personally identifiable information to file for PUA benefits. The Probation Department further notes that there are four other pending cases, and one conviction which concern the defendant defrauding other car dealerships by the same method as the incidents alleged in this indictment. The government asserts that the Probation Department's analysis and application of this enhancement is applicable and should be accepted. Further, the government can show that the defendant's bank records indicate that he purchased vehicles from Gaughan Auto Store (in Pennsylvania), Wyoming Valley Auto Sales (in Pennsylvania), Florence Toyota (in South Carolina), and Kelly Ford (in Florida) via checks drawn on the same Key Bank account used to purchase several vehicles referenced in the indictment. Moreover, law enforcement recovered multiple documents associated with the purchase of vehicles from these dealerships from Heimbach at arrest in South Carolina. The

---

[2] The government notes the difference in the calculated Guidelines range in the PSR, versus the range agreed on by the parties in the plea agreement. The discrepancy between the two ranges stems from the PSR's calculation of the defendant's criminal history, which had been estimated to have been lower, when the parties agreed on the range stated in the plea agreement.

checks and purchase records are attached as Exhibits A-D to this memorandum. Either way, this enhancement applies.

Heimbach also objects to the Probation Department's application of the USSG § 3B1.1(c) enhancement for leadership arguing it contradicts the ten or more victims' enhancement. Heimbach is wrong and provides no argument in his objection for why these two enhancements are apparently contradictory. The investigation revealed instances where Heimbach both victimized individuals for his own benefit, and caused or convinced others to participate in the scheme with him. This information was provided to the Probation Department in contemplation of this enhancement being applicable and was properly relied on by the Probation department to support the enhancement. As indicated in the PSR, Heimbach attempted to recruit his ex-girlfriend, K.W. to participate in the scheme, and further instructed her to collect from those who unlawfully filed for PUA using his defunct construction company. His role in organizing the scheme is outlined in detailed in paragraphs 13-29 of the PSR, and those facts support the application of this enhancement.

## III.    ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-

Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A.      **Consideration of the 3553(a) Factors Regarding Imprisonment**

The nature and circumstances of the offense, and the defendant's characteristics and history both necessitate the need for a top of the sentencing range period of incarceration. Put simply, this defendant has been a whirlwind of crime and fraud for years. Whether it was defrauding friends and neighbors in the community by causing PUA applications to be filed in their name (which in some circumstances precluded these individuals from legitimately obtaining benefits) and shaking them down for cuts of the benefits, obtaining cars through blatant fraud, or committing the litany of other offenses detailed in his PSR, the defendant presents a perfect profile of criminal for which a significant period of incarceration is deserved and warranted.

His crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the top of the agreed on sentencing range.

Further, the defendant's history supports the need for significant incarceration. He has been convicted of multiple fraud and theft related offenses and has spent much of his life in jail, or pending incarceration. Notably, no other less restrictive means have shown to otherwise deter him from regularly breaking the law. It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. *Id.*

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

To be sure, information about the defendant's background, childhood, and addiction provide for a sympathetic story as to why he acted the way that he did that led to his sentencing in this case. It does not, and cannot, absolve him of his actions, and it should not persuade the court that a lower end of the sentencing range is acceptable in this case. Whatever circumstances lead any person to a place of significant decision-making, a person must abide by those decisions

and accept the triumphs and consequences. There are unfortunately many more people like the defendant who are committing crime and walking the streets of this district. They too should be held fully accountable if they break the law, and are found guilty, and this defendant should as well. His track record preponderates only in the direction of recidivism, and a lengthy prison sentence is important to uphold the rule of law, and provide serious consequences for his criminal actions.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a top of the agreed on sentencing range. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

### B.    Supervised Release

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to

- 8 -

promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of the full 3 years possible is warranted. As explained above, the defendant presents a lengthy record of criminal conduct. Close supervision following release from imprisonment is needed to aid his reentry to society, ensure restitution is paid, and protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2. The Commission adds: "In a case in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. n.3.

## IV.    CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a sentence at the top end of

the agreed on sentencing range of 63 to 96 months' imprisonment is the only sentence that fully

accounts for the scope and severity of the defendant's criminal conduct

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Chandler Harris*
S. CHANDLER HARRIS
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Jeremy Isard, Esq.
Counsel for Justin Heimbach

*/s Chandler Harris*
S. CHANDLER HARRIS
Assistant United States Attorney

DATED:  June 10, 2026